IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY L. PAGE, | No. C 13-5352 WHA (PR) |
|     Petitioner, | **ORDER GRANTING MOTION TO DISMISS; DENYING CERTIFICATE OF APPEALABILITY** |
|    v. | |
| AUDREY KING, Executive Director California Department of Mental Health, | (Docket No. 16) |
|     Respondent. | |

## INTRODUCTION

On November 19, 2013, petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his civil commitment to a California mental health institution pursuant to California's Sexually Violent Predators Act. *See* Cal. Welf. & Inst. Code § 6600, et seq. ("SVPA"). The petition originally filed in this case (Dkt.1) set forth the following four claims: (1) that petitioner's commitment violates his right to due process because certain mental health evaluations were performed under an invalid protocol; (2) that his evaluations were not performed according to a standardized assessment protocol but pursuant to an "underground regulation"; (3) special circumstances warrant federal intervention; and (4) the petition should not be dismissed on the grounds of abstention or res judicata. The second claim was dismissed as being based upon state law, and the third and fourth claims were dismissed because they set forth arguments against dismissal of this petition but did not state independent grounds for federal habeas relief. Upon further review, his second and third claims while vague, make arguments that could conceivably raise federal constitutional violations. Specifically, in his second claim, he adds the phrase "14th Ammend." at the end of the claim

(Dkt. 1 at 18), and in his third claim he argues, among other things, that his commitment is based upon a diagnosis for "paraphilia NOS, non-consent" that is not a medically recognized mental disorder (*id.* at 22-25). Those arguments, as well as petitioner's other claims, are addressed below.

Petitioner thereafter filed another habeas petition challenging his current civil commitment (No. C 14-2052 WHA (PR)), and it set forth an additional claim: that he was required by the SVPA and due process to be released in 2012 when mental health evaluations did not concur as to whether he remained an SVP. The two petitions were consolidated in the instant case. Hereinafter the two consolidated petitions (Dkt. 1 &15) are jointly referred to simply as "the petition," unless otherwise specified.

Respondent filed a motion to dismiss the petition, arguing that petitioner's claims against his original commitment proceedings in 2004 violate the federal custody requirement, and are untimely and successive. Respondent also argues that his claims against his current pending re-commitment proceedings should be dismissed on abstention grounds. Respondent further argues that in any event all of petitioner's claims are without merit. Petitioner filed an opposition to the motion, and respondent filed a reply brief. Petitioner then filed a motion for leave to file a supplemental opposition, which was granted. The parties were thereafter ordered to file supplemental briefs addressing the delay in petitioner's being tried on the 2006 re-commitment petition. Respondent filed a supplemental brief, petitioner filed a supplemental opposition, and respondent filed a supplemental reply brief.

For the reasons discussed below, respondent's motion to dismiss is **GRANTED**, and the petition is **DISMISSED** without prejudice to filing a new petition in the Eastern District of California, the district in which petitioner is confined.

**STATEMENT**

I.  SVPA COMMITMENT PROCEEDINGS

The SVPA authorizes the state to file a petition to civilly commit a person as a sexually violent predator ("SVP") if he (1) has been convicted of a sexually violent offense and (2) suffers from a diagnosed mental disorder that makes it likely that he will engage in sexually

violent criminal behavior in the future. *See* Cal. Welf. & Inst. Code § 6600(a)(1). The commitment petition must be filed while the individual is still in custody under a determinate prison term, as a result of parole revocation, or under a special SVPA-authorized "hold." *Id.* § 6601(a)(2). After the petition is filed, the superior court must hold a probable cause hearing, and then a jury trial at which the state must prove beyond a reasonable doubt that the individual meets the criteria as an SVP. *Id.* §§ 6602-03. Originally, the SVPA provided for commitment for two-year terms, at the end of each the individual could be recommitted after a new trial for an additional two-year term. *See Orozco v. Superior Court*, 11 Cal.Rptr.3d 573, 578-79 (Cal. Ct. App. 2004). In November 2006, California passed Proposition 83, which extended the term of commitment or recommitment to an indeterminate period, thus obviating the need for a recommitment proceeding for any individual committed or re-committed after passage of the proposition. *Seeboth v. Allenby*, 789 F.3d 1099, 1101 (9th Cit. 2015) (citing cases).

II.   PETITIONER'S COMMITMENT PROCEEDINGS

Petitioner has a history of convictions for sexual offenses dating back to the 1970s. He completed his sentence for the last of these convictions in 1997. Several months before his sentence was complete, however, prosecutors with the Alameda County District Attorney's Office filed a petition in the superior court to commit him under the SVPA. In 2004, he was tried on that petition, and a jury found him to be an SVP. Based on that finding, the superior court civilly committed him to a state mental health facility for a period of two years.

Petitioner appealed the judgment to the California Court of Appeal. In affirming, the California Court of Appeal summarized the three predicate offenses presented by the prosecution to prove that petitioner qualified for commitment under the SVPA. *See People v. Page*, 2005 WL 1492388 * 3-5 (Cal. Ct. App. June 24, 2005). In 1971, petitioner was convicted of rape, second degree robbery and burglary of Antoinette B. He knocked on her door and asked to use her telephone, claiming to have been beaten. She allowed him in, and he used a pocket knife to hit her on the back and knock her down. He choked her until she "passed out," tore off her clothes, continued to hit her, and then he raped her. As he left, he took $40 from her purse.

3

The next predicate offense took place in 1977, when petitioner was convicted of rape, oral copulation, sodomy, second degree robbery, and burglary. At around 2:00 a.m., petitioner entered the home of Katherine B.. He covered her head with a towel and began to choke her on the living room couch until she passed out. He pulled off her clothes and orally copulated her. For the next four or five hours, he alternately raped her and attempted to sodomize her. He also bit her breasts, and then he led her into the bedroom, where he repeatedly sodomized her or attempted sodomize her while she continued to complain of "extreme pain." While raping her, petitioner said, "Please don't make me angry and have to do something to you," and she tried to stay quiet and limp because her two young daughters, ages seven and ten, were sleeping in a rear bedroom. Before leaving, petitioner stole a credit card and $16 from Katherine's purse. Katherine suffered abrasions and vaginal and rectal bleeding for four to five days.

The third predicate offense was for rape, second degree robbery, sodomy, and residential burglary in 1987. Petitioner entered the home of Leona L., who was fifty-nine years old, at around 1:30 a.m.. After a struggle, petitioner began choking her and forced her onto a couch, where he raped her. He told her, "Loosen up. Be nice to me. If you're not nice to me, I may kill you." He put a quilt over her head, and tried to sodomize her. She took a kitchen knife and threatened to stab petitioner, but he took it from her and poked her with it several times. He then sodomized her, and beat her further, knocking her dental bridge from her mouth. Leona suffered "excruciating anal and rectal pain that caused rectal bleeding," as well as back and leg pain for months. Before leaving, petitioner took six dollars from the kitchen table and three bottles of wine, and he said, "Okay, now you can call the police."

The prosecution also presented the opinions of two mental health professionals, Drs. Finnberg and Putman, that petitioner suffered from "paraphilia not otherwise specified [N.O.S.]," "sexual sadism" and antisocial personality disorder; that petitioner remained in the highest risk category of recidivism rate (52%) in the next 15 years; that an age-related decline in the likelihood that he would commit sexual offenses would not be expected; that he continued to be a danger to others; and that he remained an SVP. These evaluations were based in part on petitioner's aversion to mental health treatment at the state hospital where he was detained, his

4

three predicate sex offenses, and a number of other incidents involving petitioner's sexually violent behavior against women.

Petitioner's appeal to the California Supreme Court was summarily denied.

While the commitment petition was pending, and before he was tried, petitioner filed a number of federal habeas petitions. These petitions were dismissed on various grounds, including two dismissed on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971). *See, e.g., Page v. Lockyer*, No. C 03-2282 VRW (PR) (N.D. Cal., May 28, 2003); *Page v. Lockyer*, No. C 03-2364 VRW (PR) (N.D. Cal., June 6, 2003). Petitioner appealed from the latter of these dismissals, and the United States Court of Appeals affirmed. A subsequent pre-trial federal habeas petition, asserting the violation of the right to a speedy trial, was denied on its merits, *see Page v. Lockyer*, No. C 03-4797 VRW (PR) (N.D. Cal. May 26, 2005) (Order), and that decision was affirmed on appeal, *Page v. Lockyer*, 200 Fed. Appx. 727, 727-29 (9th Cir. 2009).

After petitioner was tried in state court and committed under the SVPA in 2004, he filed federal habeas petition challenging that commitment decision. *See Page v. Mayberg*, No. C 05-4141 VRW (PR) (N.D. Cal.). That petition was denied on its merits on April 5, 2007.

III.   PETITIONER'S RE-COMMITMENT PROCEEDINGS

Before petitioner's two-year civil commitment term expired, prosecutors petitioned the Alameda County Superior Court to re-commit petitioner under the SVPA for another two-year term. In May 2006, following two continuances requested by petitioner's counsel, the superior court held a hearing and found probable cause. That determination relied on the same predicate offenses described above, as well as upon two new mental health evaluations, conducted by Drs. Coles and Hupka, in 2006 concluding that petitioner remained an SVP. The prosecutor amended the re-commitment petition in December 2006 to seek an indefinite (as opposed to two-year) re-commitment term based on the recent changes to the SVPA under Proposition 83. Four new mental health evaluations were performed in 2012, two of which concluded that petitioner remained an SVP, and two of which did not, based upon his age.

Although the re-commitment petition was initially filed in February 2006 and amended

5

in December 2006, and probable cause was found in May 2006, petitioner has still not been tried on the petition. Respondent was ordered to explain this lengthy delay, and has submitted a declaration by the prosecutor assigned to the case since 2009, as well as the state court records of the entire re-commitment proceedings since they began in March 2006 (Resp. Supp. Br. (Dkt. 27) Exhs. A, B). Respondent attempted to obtain a declaration from the attorney representing petitioner in the re-commitment proceedings, but counsel declined to provide one, citing the attorney-client privilege (*id.* Exh. C ¶¶ 3-4). Petitioner has submitted a responsive brief, but he does not dispute the explanation for the delay set forth in the state court records and the prosecutor's declaration.

The state court records and the prosecutor's declaration show that the parties have appeared over 40 times in court since the probable cause determination in May 2006, and each time the trial date has been put off, in most instances by petitioner (*id.* Exhs. A, B at ¶ 13). These records show an aggregate of approximately seven years of delay since the probable cause hearing were caused by petitioner or his attorney filing numerous motions, pro se petitions, requesting continuances, and waiving the setting of a trial date (*id.* Exh. B at ¶13m, r-v, z, aa, bb, dd-gg, ii-mm, oo-yy; Exh. A at 386, 410, 412, 416, 418, 420, 428, 430, 432, 436, 438, 440, 442, 446, 448, 450, 452, 454, 458, 460, 462, 464, 466, 468, 470, 472; Supp. Reply (dkt. 36) Ott. Decl. ¶ 2). In no instance has petitioner or his attorney requested that the trial date be set, and only one six-day continuance was requested by the State, in December 2006 (*id.* Exhs. A, B). The remainder of the delay, totaling approximately two years, is not explained by the state court minute orders or by the prosecutor's declaration because they precede the current prosecutor's assignment to the case in July 2009 (*ibid.*). Even this unexplained portion of the delay was likely caused by the defense, however, because the ordinary practice in these proceedings is to continue the setting of the trial date only at the request of the defense (*id.* Exh. B at ¶¶ 8-9). At the most recent hearing in his re-commitment proceeding, on August 7, 2015, the defense again requested that the case be continued again to January 18, 2016, for setting a trial date at that time (Supp. Reply (dkt. 36) Ott. Decl. ¶2). Petitioner does not dispute the foregoing explanation of the delay by the prosecutor and the state court records, nor does he

1  offer any alternate explanation of his own.

2  Petitioner has challenged his ongoing re-commitment proceedings in a federal habeas
3  petition before. *Page v. King*, No. C 12-3721 WHA (PR). That petition was dismissed without
4  prejudice on abstention grounds because the trial on petitioner's re-commitment petition had not
5  yet taken place. Petitioner appealed the judgment, and the United States Court of Appeals
6  denied a certificate of appealability. Petitioner thereafter filed a motion for reconsideration in
7  the district court, which was denied. When he appealed the denial of reconsideration, the Court
8  of Appeals granted a certificate of appealability in which it ordered the parties to explain the
9  delay in the 2006 re-commitment proceedings. That appeal is currently pending. *See Page v.*
10 *King*, No. 13-17352 (9th Cir.).

**ANALYSIS**

I.  2004 JUDGMENT

13  Respondent argues that any federal claims challenging the 2004 judgment committing
14 him under the SVPA must be brought under 28 U.S.C. 2254, not under 28 U.S.C. 2241. Section
15 2254 is the proper basis for a habeas petition brought by "a person in custody pursuant to the
16 judgment of a State court." Petitioner is not presently in custody under a state court judgment.
17 The only civil commitment judgment against him is from 2004, which imposed a two-year
18 commitment term that expired long ago. Since the expiration of that term in 2006, petitioner
19 has been held pursuant to the state court's determination of probable cause on the re-
20 commitment petition. As he is still awaiting trial on that petition, there is no state court
21 judgment holding petitioner in custody. The proper basis for a habeas petition by a petitioner in
22 custody who is not held "pursuant to the judgment of a State court," *ibid.*, for instance a pre-
23 trial detainee, is 28 U.S.C. 2241, not 28 U.S.C. 2254. *See McNeely v. Blanas,* 336 F.3d 822,
24 824 n.1 (9th Cir. 2003). As petitioner is not in custody pursuant to the judgment of a state
25 court, but rather is a detainee awaiting trial on the re-commitment petition, the instant federal
26 petition falls under Section 2241, not Section 2254.

27  Respondent argues that even if the instant petition falls under Section 2241, it may not
28 challenge the 2004 judgment because he is no longer in custody on that judgment. There is no

7

1  federal jurisdiction over a federal habeas petition, under either Section 2241 or 2254, if the
2  petitioner is not in custody pursuant to the judgment being challenged in the petition. *Maleng v.*
3  *Cook*, 490 U.S. 488, 490-91 (1989). As petitioner is not in custody pursuant to the 2004
4  judgment, whose commitment term has expired, he may not challenge his 2004 judgment in a
5  federal habeas petition. To the extent his claims challenge that judgment, therefore, they are
6  dismissed. In light of this conclusion, respondent's alternative grounds for dismissing claims
7  against the 2004 judgment, such as that they are successive or untimely, need not be considered.

8  Petitioner's claims are therefore viewed solely as challenging the 2006 probable cause
9  determination pursuant to which he is currently being detained, and viewed as such, the claims
10 are addressed below.

11 II.   RE-COMMITMENT PROCEEDINGS

12     A.   Trial Delay

13 Petitioner does not claim in his petition that the delay in the trial violated his right to a
14 speedy trial or any other constitutional rights. Presumably this is because, as the records
15 submitted here reflect, the delay is largely if not entirely caused by him or his counsel.

16 In his opposition to respondent's supplemental brief (dkt. 31)), petitioner does argue that
17 the SVPA's failure to set a time-limit for trial on a re-commitment petition violates a state
18 created liberty interest protected by his right to due process, and he complains that he has not
19 had a speedy trial, and that defense counsel has not been effective. These arguments, raised for
20 the first time in a supplemental opposition, are not set forth as claims for relief in the instant
21 petition. If petitioner wants to pursue these claims, he may do so in a new habeas petition under
22 Section 2241 as the limits on successive petitions in 28 U.S.C. 2244(b) do not apply to habeas
23 petitions under Section 2241. If he decides to pursue another federal petition, he should be note
24 the following:

25 Petitioner does not have a state-created liberty interest protected by due process in being
26 tried on the re-commitment within any particular time period. Deprivations that are authorized
27 by state law amount to deprivations of a liberty interest protected by due process, provided that
28 (1) state statutes or regulations narrowly restrict the power of officials to impose the

8

deprivation, i.e., give the individual a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). The SVPA does not impose any time limit for trial on a re-commitment petition. *See Seeboth v. Allenby*, 789 F.3d 1099, 1101 (9th Cir. 2015) (finding SVPA's lack of timing provision for recommitment petitions does not violate Equal Protection Clause). The absence of a timing provision in the SVPA means that state law did not restrict, let alone narrowly restrict, the power of the state court to delay the trial on his re-commitment petition. As a result, there was no liberty interest protected by due process implicated here.

Petitioner cites a state court decision stating that "trial should occur within a reasonable time after the probable cause hearing." *See Orozco v. Superior Court*, 117 Cal.App.4th 170, 179 (2004). That statement was dicta, however, insofar as *Orozco* held that any delay argument was waived because the defense was responsible for the delay in trial. *Id.* at 179-80. That waiver analysis would certainly seem to apply here under state law, as petitioner is largely, if not entirely, responsible for the lengthy delay.

If petitioner wants to bring a speedy trial claim, he should be aware that such a claim is decided based upon the four factors set fort in *Barker v. Wingo*, 407 U.S. 514, 530, (1972): (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Petitioner brought speedy trial claims in two prior federal petitions, albeit about the six-year delay in being tried on the original commitment petition, not the delay in being tried on the re-commitment petition. Those claims were denied under *Barker*, because petitioner had caused the delay himself "by filing numerous motions and pro se petitions, seeking continuances, and waiving time at the probable cause hearing." *Page v. Mayberg*, No. C 05-4141 VRW (PR), slip op. at 8-9 (N.D. Cal. April 5, 2007) (citing *Page v. Lockyer*, No. C 03–4797 VRW (PR), slip op. at 9-19 (N.D. Cal. May 26, 2005)). Petitioner is also largely if not entirely responsible for the delays in his re-commitment trial, and he does not indicate that he or his attorney have ever requested a trial date. He would have to overcome these facts based upon the other *Barker* factors in order to succeed on any speedy trial claim.

B. Claims for Relief

9

The following claims for relief are set forth in the petition: (1) that his commitment violates his right to due process because his 2004 "update evaluation" and "recommitment evaluation" were performed in accordance with an invalid protocol (Dkt.1 at 6, 12); (2) that his evaluations were not performed according to a standardized assessment protocol as required by California Welfare and Institutions Code Section 6601(c) but pursuant to an "underground regulation" (*id.* at 6, 18); (3) special circumstances warrant federal intervention (*id.* at 6); (4) the petition should not be dismissed on the grounds of abstention or res judicata (*id.* at 26); and (5) that he was required by the SVPA and due process to be released in 2012 when mental health evaluations did not concur as to whether he remained an SVP (Dkt.15 at 15-21).

### 1. Claim One

Petitioner's first claim in the petition is that his commitment violates his right to due process because his 2004 "update evaluation" and "recommitment evaluation" were performed in accordance with an "invalid protocol" (Dkt.1 at 6, 12). The evaluations petitioner refers to were those performed by Dr. Finnberg and Dr. Putnam in 2004 that were relied upon to commit him in 2004, as well as the evaluations by Dr. Coles and Dr. Hupka in 2005 and 2006 that were relied upon for his re-commitment petition (*id.* 12-13). All of these evaluations diagnosed petitioner with "paraphilia NOS, Non-consenting partners - sadistic traits" and "antisocial personality disorder." Dr. Hupka also found that petitioner was in the "high" category of risk for being convicted of another sexual offense when compared to other sex offenders in his age group. Dr. Hupka and Dr. Cole concluded that he was an SVP withing the meaning of the SVPA.

Though not challenged in this claim, it is noted that four updated mental health evaluations were performed on petitioner In 2012. First, Dr. Coles and Dr. Murphy evaluated him: Dr. Coles found he was no longer an SVP and Dr. Murphy found that he remained an SVP. Two more evaluations were ordered, and Dr. Essres found that petitioner remained an SVP, but Dr. Musacco found that petitioner was no longer an SVP. These evaluations are not submitted in their entirety by either party. However, the portions that have been submitted show that Dr. Essres's found that petitioner remained a high risk because he has consistently refused

1  treatment while in the state hospital. Dr. Coles's opposite conclusion was based in part on
2  petitioner's age of 60.

3  Petitioner's claim boils down to two arguments. First, the mental health evaluations are
4  "invalid" under Welfare and Institutions Code Section 6601(a)(1) because they were performed
5  in 2004-2006, when he was no longer a prisoner. This is a claim for the violation of state law
6  that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68
7  (1991). Petitioner asserts that this violated his right to due process, but he cannot "transform a
8  state-law issue into a federal one merely by asserting a violation of due process." *Langford v.
9  Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). The argument does not appear to have any merit in
10  any event. Section 6601(a)(1) requires the state to refer anyone in prison who may be an SVP
11  for an "initial screening" six months before they are released. *See Reilly v. Superior Court*, 57
12  Cal.4th 641, 646 (2013) (citing Sections 6601(a)(1),(b)). This does not mean that any future
13  mental health evaluations conducted by the state to determine whether the subject is in fact and
14  remains an SVP are "invalid." *See id.* at 646-47 (describing subsequent "full" evaluations and
15  re-evaluations authorized by SVPA).

16  The second argument is that his commitment violates due process because in 2008,
17  California's Office of Administrative Law ("OAL") determined that the protocol used in 2007
18  to assess whether a subject is an SVP was procedurally invalid as an "underground regulation."
19  Petitioner's "underground regulation" argument is based on his assertion that the state officials
20  did not comply with the California Administrative Procedures Act. *See Reilly*, 57 Cal.4th at
21  648-49. As such, the asserted error is a state law error that may not be the basis of federal
22  habeas relief. *Estelle*, 502 U.S. at 67-68. In any event, the OAL determination concerned the
23  2007 protocol, *see Reilly*, 57 Cal.4th at 648-50, whereas the mental health evaluations
24  challenged here were conducted earlier, in 2004-2006, pursuant to a different protocol.
25  Moreover, the state courts have determined that any error that occurred under the invalid 2007
26  protocol would have to be "material" to warrant dismissal, *see id.* at 646, a showing that
27  petitioner does not attempt to make here. Accordingly, petitioner has not shown that his mental
28  health evaluations were invalid or violated his right to due process.

### 2. Claim Two

Petitioner claims that his evaluations were not performed according to a "standardized assessment protocol," as required by California Welfare and Institutions Code Section 6601(c), but rather pursuant to an "underground regulation" (*id.* at 6, 18). Petitioner does not specify in this claim which evaluations or protocols he refers to, but it appears that he is referring to the same evaluations and protocol discussed above in his first claim. This claim was dismissed as a claim only asserting violation of state law, which is not cognizable grounds for federal habeas relief. *See Estelle*, 502 U.S. 67-68. It is further noted that petitioner added the phrase "14th Ammend." to the end of the claim (Dkt.1 at 20). He does not discuss or cite to any federal law, or indeed provide any mention of federal law beyond that phrase. Simply adding the phrase "14th Ammend." to a claim asserting the violation of state law does not transform the issue into a federal claim. *See Langford*, 110 F.3d at 1389.

### 3. Claim Three

In his third claim, petitioner asserts that "special circumstances warrant federal intervention." This claim was dismissed upon initial review because it argued that the instant federal petition should be considered, but it did not appear to raise independent grounds for habeas relief. Upon further review of the claim, petitioner argues within the discussion of the claim that his continued detention under the SVPA violates his rights under the Double Jeopardy Clause because the diagnosis of "paraphilia NOS, non-consent" is not a medically valid mental disorder (Dkt.1 at 22-25). To support the assertion that it is not medically recognized, petitioner submits a declaration and several articles by a professor of psychiatry and one of the authors of the fourth edition of the Diagnostic and Statistics Manual ("DSM"), Dr. Allen Frances (Dkt. 1 at App. R, S; Dkt. 4). According to Dr. Frances, "paraphilia NOS non-consent" is not recognized in the DSM as a mental disorder. Dr. Frances also opines that neither "paraphilia NOS non-consent" nor anti-social personality disorder should be allowed to be the basis for an SVP determination because they show criminality but not necessarily mental illness.

When a prisoner is civilly committed after completing his or her criminal sentence, the

1    commitment does not violate the Double Jeopardy Clauses as long as the commitment statute
2    does not establish criminal proceedings. *See Kansas v. Hendricks*, 521 U.S. 346, 359-69 (1997)
3    (finding Kansas SVP proceedings not criminal). For purposes of its constitutionality, the SVPA
4    is similar in all relevant respects to the Kansas statute upheld in *Hendricks*, and as such the
5    proceedings it establishes are not criminal in nature. *See Hubbart v. Knapp*, 379 F.3d 773, 779-
6    80 (9th Cir. 2004). The conclusion that SVPA's commitment proceedings are not "criminal" in
7    nature under *Hendricks* is not affected by evidence that certain medical experts have rejected
8    petitioner's diagnosis as a valid basis for an SVP determination. Accordingly, petitioner has not
9    shown that his commitment under the SVPA violates his rights under the Double Jeopardy
10   Clause.

11        Nor does the opinion of Dr. Frances, and any other experts who agree with him, mean
12   that there's a violation of his due process rights. The federal constitutional right to due process
13   does not require civil commitment of an SVP to be based upon a uniformly recognized mental
14   health disorder. States may, in defining who may be civilly committed, employ mental health
15   categories that "do not fit precisely with the definitions employed by the medical community."
16   *Hendricks*, 521 U.S. at 359. The scientific debate over paraphilia NOS, non-consent, including
17   its exclusion from the DSM, does not mean that the diagnosis is "too imprecise a category" such
18   that commitment of individual as an SVP based on such a diagnosis funs afoul of due process.
19   *McGee v. Bartow*, 593 F.3d 556, 570, 581 (7th Cir. 2010) (citing *Hendricks*, 521 U.S. at 373)
20   ("we cannot conclude that the diagnosis of a rape-related paraphilia [i.e. paraphilia NOS] is so
21   empty of scientific pedigree or so near-universal in its rejection by the mental health profession
22   that civil commitment cannot be upheld as constitutional when this diagnosis serves as a
23   predicate"); *see also People v. Johnson*, 235 Cal. App. 4th 80, 185 Cal. Rptr. 3d 135, 142-43
24   (Cal. Ct. App. 2015) ("Even if the latest edition of the DSM "reflects a growing skepticism in
25   the psychiatric community about paraphilic coercive disorder, we cannot conclude that a
26   commitment based on that disorder violates due process" ). Even California does not define an
27   SVP in lock-step with mental disorders recognized by the DSM. The assessment of an SVP is
28   based upon "diagnosable mental disorders, as well as various factors known to be associated

13

with the risk of reoffense among sex offenders, including criminal and psychosexual history, type degree, and duration of sexual deviance, and severity of mental disorder." *Reilly*, 57 Cal. 4th at 647 (quoting California Welfare and Institutions Code Section 6601(c)) (internal quotations omitted). For the persuasive reasons discussed in *McGee* and *Johnson*, the existence of a disagreement between the doctors who found petitioner to be an SVP on the one hand, and Dr. Frances and the DSM on the other, does not render petitioner's commitment violative of due process.

Accordingly, this claim lacks merit as well.

### 4. Claim Four / Abstention

In his fourth claim, petitioner argues that the case should not be dismissed on abstention or res judicata grounds. Respondent makes no res judicata argument, but does argue that the petition should be dismissed on abstention grounds because petitioner has not yet been tried on the re-commitment petition. Under *Younger v. Harris*, 401 U.S. 37 (1971), a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances. 401 U.S. at 53-54. As noted above, a number of petitioner's prior federal petitions have been dismissed on these grounds because they challenged his commitment or re-commitment petitions before trial, and such dismissals have been affirmed by the United States Court of Appeals. It is possible, however, that because of the ongoing and lengthy pre-trial delay in petitioner's re-commitment trial, such proceedings may no longer be considered "ongoing" under *Younger*. That United States Court of Appeals has granted a certificate on that question in petitioner's appeal of the denial of reconsideration in his 2012 federal habeas petition. *See Page v. King*, No. 13-17352, slip op. 1 (9th Cir. May 21, 2014) (order granting certificate of appealability). That appeal is currently pending. Whether abstention is proper in the instant case need not be decided because petitioner's claims lack merit in any event.

### 5. Claim Five

Petitioner claims that the SVPA, specifically California Welfare and Institutions Code Sections 6601(f) and 6605(c), required his release from custody in 2012, when there was no

14

longer a concurrence between two mental health professionals that he remained SVP (Dkt. 15 at 15-21). He further argues that under he had a liberty interest in his release which was protected by his federal constitutional right to due process.

In *Reilly*, the California Supreme Court outlined the SVPA procedure for making an SVP determination, including Section 6601(f):

> The Welfare and Institutions Code outlines the procedure for determining whether a person is an SVP. (§ 6600 et seq.) Under section 6601, whenever the Secretary of the Department of Corrections and Rehabilitation (Department) determines that a person may be an SVP, the secretary refers that person to the Department and the Board of Parole Hearings for an initial screening. (§ 6601, subds. (a)(1), (b).) In screening, the Department considers "whether the person has committed a sexually violent predatory offense" and reviews "the person's social, criminal, and institutional history." (*Id*., subd.(b).) If the Department determines that the individual is likely to be an SVP, it refers him or her to the State Department of State Hospitals (SDSH; formerly the State Department of Mental Health (former DMH)) for a "full evaluation." (*Ibid*.)
>
> Two mental health experts conduct the full evaluation. The Director of the SDSH (Director) appoints these experts, who must be either psychologists or psychiatrists. (§ 6601, subd. (d).) Each expert "shall evaluate the person in accordance with a standardized assessment protocol ... to determine whether the person is a sexually violent predator as defined in [section 6600]. The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders," including "criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).)
>
> If both evaluators agree that the person has a diagnosed mental disorder, so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director forwards a request that a petition for commitment be filed as specified under section 6601, subdivision (I). However, if the evaluators disagree on the individual's SVP status, the Director "shall arrange for further examination of the person by two independent professionals ...." (§ 6601, subd. (e).) At this stage, the petition "shall only be filed if both independent professionals who evaluate the person pursuant to subdivision (e) concur that the person meets the criteria for commitment specified in subdivision (d)." (§ 6601, subd. (f).) Read together, subdivisions (d), (e), and (f) of section 6601 amount to an unambiguous statutory prefiling requirement "that a petition for commitment or recommitment may not be filed unless two evaluators, appointed under the procedures specified in section 6601, subdivisions (d) and (e), have concurred that the person currently meets the criteria for commitment under the SVPA." (*Ghilotti*, *supra*, 27 Cal.4th at p. 909, 119 Cal.Rptr.2d 1, 44 P.3d 949.) Where this initial requirement is not met, the commitment may not proceed. (*Id*. at p. 910, 119 Cal.Rptr.2d 1, 44 P.3d 949.)
>
> The SVPA also provides for evaluations to be updated or replaced after a commitment petition has been filed. (§ 6603, subd. (c).) Section 6603, subdivision (c) was enacted to clarify the right of the attorney seeking commitment to obtain up-to-date evaluations, in light of the fact that commitment under the SVPA is based on a "current mental disorder." (*Albertson v. Superior Court* (2001) 25 Cal.4th 796, 802, 107 Cal.Rptr.2d 381, 23 P.3d 611; *see id.* at ¶. 803–804, 107

15

>Cal.Rptr.2d 381, 23 P.3d 611.) If an updated or replacement evaluation results in a split of opinion as to whether the individual meets the criteria for commitment, the SDSH must obtain two additional evaluations in accordance with subdivision (f) of section 6601. (§ 6603, subd. (c).) However, although initial evaluations conducted under section 6601 must agree, a lack of concurrence between updated or replacement evaluations does not require dismissal of the petition. (*Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 328, 115 Cal.Rptr.2d 477 (*Gray* ).) Rather, the updated evaluations' primary purpose is evidentiary or informational. (*Ibid*.) Mandatory dismissal is not required where one or both of the later evaluators conclude the individual does not meet the criteria for commitment. (*Ibid*.)

*Reilly*, 57 Cal.4th at 646-48.

Section 6605(c) provides:

>If the State Department of State Hospitals has reason to believe that a person committed to it has a sexually violent predator is no longer a sexually violent predator, it shall seek judicial review of the person's commitment pursuant to the procedures set forth in Section 7250 in the superior court from which the commitment was made. If the superior court determines that the person is no longer a sexually violent predator, he or she shall be unconditionally released and unconditionally discharged.

The gist of petitioner's argument is that in 2012, he could no longer be deemed SVP under Sections 6601(d)-(f) because two experts no longer agreed that he remained an SVP. First Dr. Cole and Dr. Murphy came to different conclusions, and then Dr. Musacco and Dr. Essres came to different conclusions, on the issue. According to petitioner, this meant that under Section 6605(c) state officials had "reason to believe" that he no longer remained an SVP, and they were therefore required seek judicial review of his commitment and the superior court was required to release him. When this did not happen, petitioner argues, state officials not only violated the SVPA but also petitioner's liberty interests protected by the federal constitutional guarantee of due process.

Any violation the SVPA is a state law violation that is not grounds for federal habeas relief. *See Estelle*, 502 U.S. 67-68. In limited circumstances, state statutes may give an individual a liberty interest that is protected by the federal constitutional guarantee of due process. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1041 n.3 (9th Cir. 2002) (identifying test for constitutionally protected liberty interests of pretrial detainees under *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989), and *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

16

1    Assuming for purposes of this discussion that petitioner had a constitutionally
2 protected liberty interest arises from the SVPA provisions requiring two concurring expert
3 opinions, there was no violation of those provisions here.  Under the SVPA, two
4 concurring expert opinions are only required to support the initial petition to commit or re-
5 commit.  *See* Cal. Welf. & Inst. Code. §§ 6601(d)-(f); *Reilly*, 57 Cal. 4th at 646-47.
6 Petitioner's initial re-commitment petition in 2006 was based on the concurrence at that
7 time of two mental health experts (Dr. Coles and Dr. Hupka) that he was an SVP.  The later
8 split of experts did not occur until 2012, when petitioner received updated evaluations
9 pursuant to Section 6603(c).  A split of experts performing updated evaluations, after the
10 initial petition to commit or re-commit, does not mean that the subject is no longer an SVP
11 and does not require dismissal of the petition under the SVPA.  *See* Cal. Welf. & Inst. Code
12 § 6603(c); *Reilly*, 57 Cal.4th at 648; *Gray v. Superior Court*, 95 Cal. App.4th 322, 328
13 (2002).  Rather, the "updated evaluations' primary purpose is evidentiary or
14 informational." *Reilly*, 57 Cal.4th at 648.  Therefore the failure to conduct judicial review
15 or release petitioner following the split expert opinions on petitioner's updated evaluations
16 in 2012 did not violate either the SVPA or any constitutionally protected liberty interest
17 that it may have created.
18    Accordingly, this claim also is without merit.

## CONCLUSION

20    Respondent's motion to dismiss the petition is **GRANTED** and the petition is
21 **DISMISSED** without prejudice.  Petitioner has failed to make a substantial showing that a
22 reasonable jurist would find the denial of his claims debatable or wrong.  *Slack v.*
23 *McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is
24 warranted in this case.
25    The clerk shall enter judgment and close the file.
26    **IT IS SO ORDERED.**

27 Dated: September   18  , 2015.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

17